Filed 8/2/22  In re Sophia C. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re SOPHIA C., a Person Coming Under the Juvenile Court Law. | B318301 |
| ———————————————— LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ERIKA C.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP05104A) |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore.  Affirmed.

Michelle E. Butler, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

————————————————

Erika C. (Mother) appeals from the juvenile court's order terminating her parental rights to her daughter Sophia C. She contends that the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with its duty of inquiry to determine whether there is a reason to believe or know that Sophia is an Indian child within the meaning of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Because Mother has failed to demonstrate that DCFS's error was prejudicial, we affirm.

## FACTUAL AND PROCEDURAL SUMMARY[1]

On August 13, 2018, DCFS filed a juvenile dependency petition concerning Sophia under section 300 of the Welfare and Institutions Code.[2] Attached to the petition was an ICWA-010 form dated August 10 in which DCFS indicated that it made inquiry, and that Sophia had no known Indian ancestry.

The following day, the parents appeared in court at a detention hearing and filed Parental Notification of Indian Status forms (Judicial Council Forms, form ICWA-020 (rev. Jan. 1, 2008)). Both parents checked a box next to the statement: "I have no Indian ancestry as far as I know." On this basis, the court found that ICWA did not apply. According to a dependency investigator for the DCFS, both parents again denied having any Indian ancestry in May 2021.

DCFS social workers spoke with several maternal relatives, but there is no indication that they asked any of them about

---

[1] Because the only issues on appeal are whether DCFS failed to comply with its duty of inquiry under section 224.2 and, if so, what remedy is appropriate, we focus on the facts and procedural history relevant to that issue.

[2] Subsequent unspecified statutory references are to the Welfare and Institutions Code.

possible Indian ancestry.  Among the maternal relatives contacted were the grandfather, two great aunts, a great uncle, two cousins, and two uncles.  DCFS social workers also encountered Sophia's maternal great grandmother but did not speak with her, and learned about another maternal cousin but apparently did not contact him.  In a prior dependency case, both maternal grandparents stated that they had no Indian ancestry as far as they knew.[3]

DCFS social workers also interviewed both paternal grandparents and at least one paternal aunt, but there is no indication that they ever asked them about potential Indian ancestry.  Mother gave the names of a few other paternal relatives, but it is not clear from the record if DCFS obtained contact information or spoke with any of them.  Father and the paternal grandparents stated that they were born in El Salvador and migrated to the United States when Father was eight or nine years old and the grandparents were in their 40's.

After several years of proceedings, the juvenile court terminated Mother and Father's parental rights on January 31, 2022.  Mother filed a timely appeal.

## DISCUSSION

When DCFS files a petition under section 300 concerning a child, it has "an affirmative and continuing duty to inquire whether [the] child . . . is or may be an Indian child" within the meaning of ICWA.  (§ 224.2, subd. (a); *In re Antonio R.* (2022) 76 Cal.App.5th

---

[3] Pursuant to DCFS's request, we take judicial notice of portions of the juvenile court's reporter's transcripts filed in a related appellate case, *In re B.C.* (appeal dismissed December 3, 2012, B243191), in which the maternal grandparents made these statements in 2012.

421, 429.) More particularly, when DCFS seeks foster care placement for the child, pre-adoptive placement, or termination of parental rights, it "must ask the child, if the child is old enough, and the parents, . . . extended family members, [and] others who have an interest in the child . . . whether the child is or may be an Indian child." (Cal. Rules of Court, rule 5.481(a)(1).)[4]

Here, there is no evidence that DCFS ever asked any maternal relatives any questions to determine whether Sophia is or may be an Indian child. The grandparents, aunts, uncles, and cousins with whom social workers spoke are either "extended family member[s]," as defined in ICWA (25 U.S.C. § 1903(2)) or persons who have an interest in the children under California law (§ 224.2, subd. (b); see Cal. Rules of Court, rule 5.481(a)(1)). In some cases, DCFS social workers continued contact with the relatives over several years, but the record does not indicate a DCFS social worker or investigator ever asked any of them about possible tribal membership.

The remedy on appeal for a social welfare agency's failure to comply with the duty of initial inquiry is unsettled. (See, e.g., *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779 [failure to comply with duty of initial inquiry is harmless unless the record, together

---

[4] The juvenile court's ICWA findings made at the detention hearing and at the jurisdiction/disposition hearings all were made prior to the amendment to section 224.2, subd. (b) (effective Jan. 1, 2019) and the amendment to California Rules of Court, rule 5.481 (effective Jan. 1, 2020), which are the provisions upon which Mother relies to challenge the sufficiency of DCFS's initial ICWA inquiries in this case. The parties have not addressed, and in light of our conclusion regarding harmless error we have no need to decide, to what extent DCFS was required to comply with these amendments in this case.

with any proffer by the appellant, suggests a reason to believe that the child may be an Indian child]; (*In re Ezequiel G.* (July 29, 2022, B314432) ___ Cal.App.5th ___ [2022 Cal.App. Lexis 671] (*Ezequiel G.*) [no reversal on the basis of failure to inquire unless the record suggests the absence of further inquiry was prejudicial]); *In re A.R.* (2022) 77 Cal.App.5th 197, 207 [reversal is required "in all cases where ICWA requirements have been ignored"]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 (*Benjamin M.*) [reversal required when "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child"]; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431 [in the absence of a representation by the appellant of Indian heritage, "there can be no prejudice and no miscarriage of justice requiring reversal"].)

This division of this court has generally evaluated this issue to determine whether, if further inquiry is required after remand, " 'the probability of obtaining meaningful information is reasonable in the context of ICWA.' " (*In re Darian R.* (2022) 75 Cal.App.5th 502, 509, quoting *Benjamin M., supra,* 70 Cal.App.5th at p. 744.) In making this determination, we have rejected "a wooden approach to prejudice" (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1017) and refused to require further inquiry when, based upon the particular circumstances revealed by the record, it is apparent "that additional information would not have been meaningful to the inquiry" (*Benjamin M., supra,* 70 Cal.App.5th at p. 743; see, e.g., *In re S.S.* (2022) 75 Cal.App.5th 575, 582−583 [failure to inquire of the child's maternal grandmother was harmless where the maternal grandmother was in contact with the social worker and had a strong incentive to bring to the court's attention facts suggesting the child is an Indian child].)

In this case, there is no reason to believe that additional inquiry would be fruitful. On Mother's side of the family, the grandparents' denial of Indian ancestry in a prior proceeding provides strong evidence for this conclusion. As our colleagues in Division Three recently noted, "tribal membership typically requires an affirmative act by the enrollee or her parent," and as a result, "a parent typically will know whether she has applied for membership for herself or her child." (*Ezequiel G.*, *supra*, ___ Cal.App.5th at p. ___ [2022 Cal.App. Lexis 671 at pp. *33−*34].) The record suggests that the extended family was relatively tight-knit and in contact with one another. It would be exceptionally strange if Sophia was a member of an Indian tribe, and this information was known by an aunt or cousin, but not by either of her parents or her maternal grandparents. The only available family member from an earlier generation than the grandparents was the maternal great grandmother, but the record indicates that she was suffering from dementia at the time DCFS social workers contacted her.

The paternal family's recent immigration to the United States makes it highly unlikely that Sophia is an Indian child through that side of the family. The definition of " 'Indian child' " is not based on ancestry, but rather " 'on the child's *political ties* to a federally recognized Indian Tribe, either by virtue of the child's own citizenship in the Tribe, or through a biological parent's citizenship and the child's eligibility for citizenship.' " (*In re Ezequiel G.*, *supra*, ___ Cal.App.5th at p. ___ [2022 Cal.App. Lexis 671 at p. *32].) With no apparent presence in the United States prior to 2008, it is not reasonably probable that anyone on Father's side of the family was a tribal member. (See *In re G.A.* (July 1, 2022, C094857) ___ Cal.App.5th ___ [2022 Cal.App. Lexis 630 at p. *14] [where the father was born in Mexico, the possibility that a

6

paternal ancestor was a member of a federally recognized Indian tribe was too speculative to support reversal based on agency's failure to inquire of paternal relatives].)

Because there is no reasonable probability that additional inquiry would have yielded meaningful information, DCFS's failure to inquire of the extended family members was harmless. (See *In re Darian R., supra,* 75 Cal.App.5th at pp. 509–510.)

## DISPOSITION

The juvenile court's order is affirmed.
<u>NOT TO BE PUBLISHED</u>.


                                        ROTHSCHILD, P. J.

We concur:



                CHANEY, J.



                KELLEY, J.*

---

&ast; Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7